



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 18, 2026**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FT. WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EDMOND JOSEPH CHURCHMAN AND | § | CASE NO. 16-42785-MXM7 |
| KIMBERLY LANE CHURCHMAN, | § | |
| | § | |
| DEBTORS. | § | CHAPTER 7 |
| | § | |

### ORDER REGARDING TRUSTEE'S (i) OBJECTION TO EXEMPTIONS, AND
### (ii) MOTION TO DETERMINE PROPER DISTRIBUTION OF SURPLUS FUNDS
*[Related to ECF Nos. 32 & 40]*

Before the Court are the *Trustee's Objection to Exemptions*[1] and the *Trustee's Motion to Determine Proper Disbursement of Surplus Funds*[2] (together, the "***Objection and Motion***") filed by John Dee Spicer, Chapter 7 Trustee (the "***Trustee***") in the above-captioned bankruptcy case. The Trustee's Objection and Motion seek to deny the exemption claimed by Ms. Kimberly Lane Churchman ("***Ms. Churchman***") in proceeds received from a post-petition settlement of a post-

---

[1] ECF No. 32.
[2] ECF No. 40.

petition personal injury lawsuit filed on behalf of Ms. Churchman for injuries and claims that accrued prepetition.

The Court has reviewed and carefully considered the Objection and Motion, Ms. Churchman's Response,[3] the Declaration,[4] the testimony of Ms. Churchman, the exhibits admitted into evidence,[5] and the arguments of counsel. For the reasons detailed below, the Court finds and concludes that the Objection and Motion are ***OVERRULED*** and ***DENIED*** respectively.

## I.    BACKGROUND FACTS

On July 22, 2016, Ms. Churchman and her late husband[6] (together, "***Debtors***") filed their *Voluntary Petition* under Chapter 7 Bankruptcy Code along with their Schedules and Statement of Financial Affairs.[7]

On January 4, 2017, the Trustee filed a *Chapter 7 Trustee's Report of No Distribution*.[8]

On February 3, 2017, Debtors received their discharge[9] and the bankruptcy case was closed (the "***Closing Date***").[10]

In or around 2010, Ms. Churchman began developing an eye disorder. At that time, however, she did not know that her eye disorder was caused by her use of Elmiron, medication she had been taking since approximately 2000 until sometime in 2014 to address an unrelated medical condition. When Debtors filed their bankruptcy case in 2016, they did not know or suspect that Ms. Churchman's prior use of Elmiron was the cause of her eye problems that ultimately gave rise to her personal injury claim (the "***PI Claim***").

---

[3] *Debtors' Response to Trustee's Objection to Exemptions*, ECF No. 35 and *Debtors' Response to Trustee's Motion to Determine Proper Disbursement of Surplus Funds*, ECF No. 45 (together, the "***Debtors' Response***").
[4] *Declaration in support of Debtor's Claim of Exemptions,* ECF No. 16 (the "***Declaration***").
[5] *See* ECF No. 52.
[6] Mr. Churchman passed away in August 2019.
[7] *See* ECF No. 1.
[8] *See* ECF Docket Entry on 01/04/2017.
[9] *See* ECF No. 13.
[10] *See* ECF No. 14.

When Debtors filed their bankruptcy case, they were not aware that Ms. Churchman owned the PI Claim, therefore, they did not disclose the PI Claim in their bankruptcy schedules. Because the PI Claim was not disclosed by Debtors or listed in Debtors' Schedules or Statement of Financial Affairs, the PI Claim was not abandoned under § 554(c) when Debtors' bankruptcy case was closed in 2017. Consequently, the PI Claim remained property of Debtors' bankruptcy estate under § 554(d).

In 2020, Ms. Churchman saw an advertisement by certain law firms that Elmiron might cause retinal or macular eye damage, which was the first time Ms. Churchman discovered there might be a connection between her prior use of Elmiron and her subsequent eye problems. Ms. Churchman contacted one of the law firms to evaluate her PI Claim against Elmiron. She ultimately retained that law firm and Ms. Churchman was added as plaintiff in the Elmiron Lawsuit.[11]

Ms. Churchman testified credibly that she did not know that (i) the PI Claim was technically property of her 2016 bankruptcy estate, (ii) she had an obligation to disclose the PI Claim in her 2016 bankruptcy case; and (iii) she had an obligation to inform the Trustee of the existence of the PI Claim and the Elmiron Lawsuit.

On or around September 27, 2024, Ms. Churchman accepted a $238,000 settlement (the "**Settlement Proceeds**") to resolve her PI Claim—again, not being aware that she had an obligation to notify the Trustee of the existence of the PI Claim and now the potential Settlement Proceeds. Again, to be clear, the Court found Ms. Churchman's testimony was credible.

In 2025, the settlement fund administrator in the Elmiron Lawsuit notified the Trustee of the existence of the PI Claim and Settlement Proceeds. Upon becoming aware of the PI Claim and

---

[11] *Elmiron Products Liability MDL, Churchman v. Alza Corp.,* Case No. 2:21-cv-17631 (D.N.J. 2021) (the "***Elmiron Lawsuit***").

Settlement Proceeds, the Trustee filed his *Discharged Trustee's Motion to Reopen Case*[12] and thereafter, Debtors' bankruptcy case was reopened.[13]

After the bankruptcy case was reopened, Ms. Churchman amended the Debtors' schedules to disclose the PI Claim with a value of $283,000.[14] She also amended Schedule C to claim $67,100 of the Settlement Proceeds as exempt under 11 U.S.C. § 522(d)(11)(D) and § 522(d)(5).[15]

The Trustee has determined that after payment of all applicable litigation costs in the Elmiron Lawsuit, the net Settlement Proceeds available to Debtors' bankruptcy estate to pay allowed claims is approximately $126,600.[16] The Trustee further determined that after payment, with interest, of all allowed claims in the bankruptcy case, approximately $100,000 will remain that could be available to pay to Ms. Churchman (i) her claimed $67,100 exemption, if allowed, and (ii) the approximate $32,900 of remaining net proceeds under § 726(a)(6).

The Trustee filed the Objection and Motion asserting that because Debtors failed to timely disclose the PI Claim and Settlement Proceeds in their Bankruptcy Case, they are judicially estopped from claiming (i)  as exempt, $67,100 of the Settlement Proceeds;[17] and (ii) entitlement to the remaining Settlement Proceeds in the approximate amount of $32,900 under § 726(a)(6).

---

[12] ECF No. 15.
[13] ECF No. 19.
[14] *Amended Schedules: A-B, with Summary of Assets and Liabilities with Declaration About an Individual Debtors Schedules*, ECF No. 28. (the "***Amended Schedules***").
[15] *Id.*
[16] ECF No. 40 at ¶ 10.
[17] ECF No. 32.

## II.     ANALYSIS

The principal issue raised in the Objection and Motion is whether the equitable doctrine of judicial estoppel applies to deny (i) a debtor's otherwise valid claim of exemptions under 11 U.S.C. § 522;[18] and (ii) a debtor's otherwise valid claim under 11 U.S.C. § 726(a)(6).

Judicial estoppel is a court-created equitable doctrine that may prevent a party from asserting a position inconsistent with one successfully asserted in prior proceedings.[19] In the Fifth Circuit, judicial estoppel may apply when (i) the party asserts a position plainly inconsistent with a prior position, (ii) a court accepted the prior position, and (iii) the inconsistency was not inadvertent.[20] To be clear, the Court finds and concludes that the Debtors' failure to disclose the PI Claim and resulting Settlement Proceeds was inadvertent—therefore, the Trustee failed to satisfy the requisite elements for judicial estoppel. But as addressed below, even if the Trustee were able to satisfy each of the elements for judicial estoppel, the Court finds and concludes that the Trustee's Objection and Motion still fail.

The Supreme Court has instructed bankruptcy courts that their equitable powers under 11 U.S.C. § 105(a) and their inherent powers may not be exercised in a manner that contravenes explicit statutory provisions of the Bankruptcy Code.[21] Accordingly, the legal issue before the Court is whether judicial estoppel may be applied to disallow either (i) a debtor's claimed exemption under § 522, or (ii) a debtor's entitlement to a distribution under § 726(a)(6). Stated

---

[18] *See* 11 U.S.C. § 522(b)(1) (authorizing a debtor to exempt property from the estate); *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (describing judicial estoppel as an equitable doctrine designed to protect the integrity of the judicial process).

[19] *New Hampshire*, 532 U.S. at 749–50; *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).

[20] *Reed*, 650 F.3d at 574 (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

[21] *Law v. Siegel*, 571 U.S. at 421 (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

differently, the Court must determine whether the equitable doctrine of judicial estoppel may override the Bankruptcy Code's detailed and comprehensive exemption or distribution schemes.[22]

## A.      The PI Claim and Settlement Proceeds Constitute Property of the Estate

The Court begins with first principles. Upon the filing of a Chapter 7 petition, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[23] Prepetition causes of action are included within that definition.[24]

Where a cause of action is not disclosed in the debtor's schedules, it is not abandoned upon closing of the case and remains property of the estate pursuant to 11 U.S.C. § 554(d).[25] The Bankruptcy Code further authorizes reopening a case "to administer assets" that were not previously administered.[26]

Here, the injury giving rise to the PI Claim accrued prepetition. Accordingly, the PI Claim became property of the estate at the moment Debtors' bankruptcy petition was filed.[27] Because the PI Claim was not originally scheduled, it was not abandoned and remained property of the estate.[28] The Trustee, therefore, was entitled to reopen Debtors' bankruptcy case and administer the PI Claim and the resulting Settlement Proceeds.[29]

## B.      11 U.S.C. § 522

An objection to a debtor's claimed exemptions is governed by 11 U.S.C. § 522 and Federal Rule of Bankruptcy Procedure 4003.[30] The objecting party bears the burden of proving that the

---

[22] *See* 11 U.S.C. § 522(b), (d) (enumerating exemptions and limitations); *Law v. Siegel*, 571 U.S. at 424 (observing that § 522 exhaustively specifies exemption criteria).

[23] 11 U.S.C. § 541(a)(1).

[24] *Reed v. City of Arlington*, 650 F.3d 571, 574–75 (5th Cir. 2011) (en banc).

[25] *Reed*, 650 F.3d at 574–76; *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008).

[26] 11 U.S.C. § 350(b).

[27] 11 U.S.C. § 541(a)(1).

[28] 11 U.S.C. § 554(d); *Reed*, 650 F.3d at 574–76.

[29] 11 U.S.C. § 350(b).

[30] *See* 11 U.S.C. § 522(l) (property claimed as exempt is exempt unless a party in interest objects); Fed. R. Bankr. P. 4003(b)(1) (setting deadline for objections).

exemptions are not properly claimed.[31] Whether property is exempt under § 522 is a question of statutory interpretation reviewed de novo.[32] The applicability of judicial estoppel is generally reviewed for abuse of discretion.[33] However, a court necessarily abuses its discretion if it applies judicial estoppel in a manner that contravenes governing statutory law.[34]

A bankruptcy court's authority under 11 U.S.C. § 105(a) and its inherent powers is subordinate to the express limitations of the Bankruptcy Code.[35] Accordingly, while judicial estoppel is an equitable doctrine applied at the court's discretion, that discretion does not extend to denying exemptions on grounds not specified in § 522.[36] Section 522 permits a debtor to exempt certain property from the estate.[37] Once properly claimed and not disallowed, exempt property is removed from the estate and "is not liable" for payment of claims against the bankruptcy estate.[38]

The Supreme Court has emphasized that § 522 "exhaustively specifies the criteria that will render property exempt."[39] Federal courts "may not refuse to honor the exemption absent a valid statutory basis for doing so."[40] In *Law v. Siegel*, the Supreme Court held that a bankruptcy court exceeded its authority when it surcharged a homestead exemption based on the debtor's fraudulent misconduct.[41] Although the debtor in *Law v. Siegel* had engaged in egregious litigation misconduct and fabricated a lien to shield equity, the Supreme Court nonetheless concluded that equitable

---

[31] Fed. R. Bankr. P. 4003(c).

[32] *In re DeBerry*, 884 F.3d 526, 529 (5th Cir. 2018) (questions of statutory construction reviewed de novo); *In re Zibman*, 268 F.3d 298, 302 (5th Cir. 2001) (same in exemption context).

[33] *Reed v. City of Arlington*, 650 F.3d 571, 573 (5th Cir. 2011) (en banc).

[34] *See Koon v. United States*, 518 U.S. 81, 100 (1996) (a district court abuses its discretion when it makes an error of law); *Law v. Siegel*, 571 U.S. 415, 421 (2014) (bankruptcy courts may not exercise equitable powers in contravention of explicit statutory provisions).

[35] *Law v. Siegel*, 571 U.S. at 421 (equitable powers must be exercised within the confines of the Code); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (same).

[36] *Law v. Siegel*, 571 U.S. at 424–25 (federal law provides no authority to deny an exemption on a ground not specified in the Code).

[37] 11 U.S.C. § 522(b)(1).

[38] 11 U.S.C. § 522(k); *Law v. Siegel*, 571 U.S. 415, 418–19 (2014).

[39] *Law v. Siegel*, 571 U.S. at 424.

[40] *Id.* at 424–25.

[41] *Id.* at 424–26.

powers under 11 U.S.C. § 105(a) and inherent authority could not override the statutory protections of § 522.[42]

The Supreme Court reaffirmed a foundational principle: "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."[43] The Supreme Court further explained that Congress has enumerated specific limitations on exemptions, including misconduct-based provisions such as §§ 522(o) and 522(q), and that bankruptcy courts are not authorized to create additional, non-statutory exceptions.[44] Accordingly, unless § 522 itself authorizes disallowance, a court may not deny an exemption on equitable grounds.

### C.       Judicial Estoppel is an Equitable Doctrine Subordinate to the Code

Judicial estoppel has frequently been applied in bankruptcy cases where a debtor fails to disclose a claim and later attempts to pursue it personally.[45] The Fifth Circuit has cautioned, however, that judicial estoppel must be applied "against the backdrop of the bankruptcy system and the ends it seeks to achieve."[46] In *Reed v. City of Arlington* the Fifth Circuit declined to apply judicial estoppel against an innocent trustee because doing so would undermine equitable distribution to creditors.[47]

Importantly, *Reed v. City of Arlington* did not address whether judicial estoppel may override § 522 exemptions. Rather, the Fifth Circuit addressed whether estoppel barred the

---

[42] *Id.* at 421–25.

[43] *Law v. Siegel*, 571 U.S. at 421 (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

[44] *Law v. Siegel*, 571 U.S. at 424–25.

[45] *See Superior Crewboats, Inc. v. Primary P & I Underwriters* (*In re Superior Crewboats*), 374 F.3d 330, 335–36 (5th Cir. 2004).

[46] *Reed*, 650 F.3d at 574.

[47] *Id.* at 576–78.

trustee's prosecution of an undisclosed claim.[48] Thus, while judicial estoppel is an available equitable doctrine, its application remains subject to statutory constraints.[49]

**D.      Judicial Estoppel Cannot Override § 522**

The Trustee urges the Court to deny the Debtors' $67,100 claimed exemption in the PI Claim and Settlement Proceeds on the basis that Debtors failed to timely disclose the PI Claim in their bankruptcy case. Even assuming *arguendo* that the elements of judicial estoppel are satisfied, the Court must determine whether the doctrine may be applied to disallow an otherwise valid exemption.

Under *Law v. Siegel*, the answer is no. The Supreme Court expressly held that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code."[50] Judicial estoppel is not codified in § 522 as a ground for exemption denial. Congress has specified circumstances in which exemptions may be limited or reduced based on misconduct, including homestead reductions under § 522(o) and caps under § 522(q). The presence of these detailed provisions confirms that bankruptcy courts are not free to create additional limitations.[51]

Moreover, § 522(k) explicitly provides that exempt property is not liable for payment of administrative expenses. Denying exemptions here would functionally achieve what *Law v. Siegel* prohibited—using equitable principles to deprive a debtor of statutorily protected exempt property. The Supreme Court acknowledged in *Law v. Siegel* that its holding may produce inequitable outcomes in individual cases but emphasized that it is not for courts to alter the balance struck by Congress.[52]

---

[48] *Id.* at 574–75.
[49] *Law v. Siegel*, 571 U.S. at 421.
[50] *Law v. Siegel*, 571 U.S. at 425.
[51] *Law v. Siegel*, 571 U.S. at 424–25; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 28–29 (2001) (courts may not imply additional exceptions where Congress has enumerated specific ones).
[52] 571 U.S. at 426–27.

While a debtor's nondisclosure may warrant serious consequences, the Code provides remedies for such misconduct, including denial of discharge under § 727(a), sanctions under Rule 9011, and potential criminal liability under 18 U.S.C. § 152.[53] What the Code does not provide is authority to deny exemptions based solely on equitable estoppel.

### E.     11 U.S.C. § 726(a)(6)

The Trustee also argues that even if Debtors may claim a portion of the Settlement Proceeds as exempt, Debtors should nevertheless be barred, under the doctrine of judicial estoppel, from receiving any surplus funds remaining in the estate after payment, in full, of all allowed claims against the estate.[54] The Court concludes that the Trustee's argument fails as a matter of law. Section 726 establishes the priority scheme governing the distribution of property of the estate in a Chapter 7 liquidation.[55]  After payment, in full, of all administrative expense claims, priority unsecured claims, and allowed general unsecured claims, the statute provides that remaining property of the estate "shall be distributed— . . .  to the debtor."[56]

Here, the Trustee anticipates that the net Settlement Proceeds will exceed the total amount of all allowed claims in the case, potentially leaving surplus funds that would otherwise be distributed to Debtors under § 726(a)(6).[57] The Trustee asks the Court to prevent that distribution based solely on the Debtor's earlier failure to disclose the PI Claim and resulting Settlement Proceeds. The Bankruptcy Code does not authorize such relief.

The Trustee's argument relies entirely on judicial estoppel, an equitable doctrine. But the Supreme Court has made clear that bankruptcy courts may not use equitable doctrines to

---

[53] *Law v. Siegel*, 571 U.S. at 427–28.
[54] ECF No. 40.
[55] 11 U.S.C. § 726(a)(6).
[56] 11 U.S.C. § 726(a)(6).
[57] ECF No. 40.

contravene explicit provisions of the Bankruptcy Code. In *Law v. Siegel*, the Supreme Court held that although bankruptcy courts possess equitable powers under § 105(a), those powers "cannot be used in a manner that contravenes specific statutory provisions."[58] The Court emphasized that when the Code grants a debtor a statutory right, courts may not deny that right based on equitable considerations or debtor misconduct unless the Code itself authorizes such a remedy.[59]

Although *Law v. Siegel* involved exemptions under § 522, its reasoning applies equally here. Section 726(a)(6) expressly directs that surplus estate property "shall be distributed— . . . to the debtor." Allowing judicial estoppel to prevent that distribution would effectively create a penalty not authorized by the Bankruptcy Code.

The Trustee relies on Fifth Circuit decisions addressing the nondisclosure of legal claims in bankruptcy cases. Those decisions, however, do not authorize a bankruptcy court to modify the statutory distribution scheme established by § 726. In *Reed v. City of Arlington*, the Fifth Circuit held that judicial estoppel may bar a debtor from personally pursuing an undisclosed cause of action after bankruptcy.[60] However, the court made clear that the appropriate remedy for nondisclosure is to permit the trustee to pursue the claim on behalf of the bankruptcy estate so that creditors, not the debtor, benefit from the recovery.[61]

The Fifth Circuit reaffirmed this principle in *Flugence v. Axis Surplus Insurance Co.*, explaining that judicial estoppel should not be applied in a manner that harms innocent creditors.[62] That objective has already been achieved here. Once the Trustee learned of the PI Claim and its resulting Settlement Proceeds, the Debtors' bankruptcy case was reopened, and the Trustee

---

[58] 571 U.S. 415, 421 (2014).
[59] *Id.* at 421–24.
[60] 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc).
[61] *Id.* at 576–77.
[62] 738 F.3d 126, 130–31 (5th Cir. 2013).

11

undertook administration of the asset for the benefit of creditors. The purpose underlying the Fifth Circuit's judicial-estoppel jurisprudence, protecting creditors, has therefore been satisfied. Nothing in *Reed* or *Flugence* suggests that a debtor forfeits surplus funds once all allowed claims against the estate have been paid in full.

Accepting the Trustee's argument would effectively create a new remedy: forfeiture of surplus estate property as a sanction for failing to disclose an asset. The Bankruptcy Code does not authorize such a penalty. Congress has already specified the consequences of debtor misconduct within the Code, including denial of discharge under § 727 and revocation of discharge under § 727(d).[63] As the Supreme Court explained in *Law v. Siegel*, when the Code specifies the remedies available for misconduct, courts may not supplement those remedies through equitable doctrines.[64] Because § 726(a)(6) expressly requires that surplus estate property "shall be distributed— . . . to the debtor" the Court may not withhold that distribution based solely on equitable considerations.

For these reasons, the Court concludes that the doctrine of judicial estoppel cannot be used to prevent a debtor from receiving a surplus distribution under § 726(a)(6). Once all allowed claims against the estate have been paid in full, § 726(a)(6) requires that the remaining property of the estate be distributed to the debtor. Accordingly, the Trustee's request to bar Debtors from receiving surplus funds must be denied.

### III.    CONCLUSION

For the reasons stated above, the Court concludes that the PI Claim and Settlement Proceeds constitute property of the bankruptcy estate pursuant to § 541(a)(1) and remains subject to administration by the Trustee because it was not abandoned under 11 U.S.C. § 554(d).

---

[63] *See* 11 U.S.C. §§ 727(a), (d).
[64] 571 U.S. at 424.

The Court further concludes, however, that § 522 governs the allowance and disallowance of exemptions and that federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Bankruptcy Code.[65] Judicial estoppel, as an equitable doctrine, may not be applied in a manner that contravenes the express provisions of § 522.[66]

Because the Trustee's objection rests solely on judicial estoppel and does not identify a statutory basis within § 522 for disallowance of the claimed exemptions, the objection cannot be sustained as a matter of law.

The Court further concludes that the same reasoning applies to the Trustee's request to bar the Debtor from receiving the surplus distribution from the estate. Section 726 establishes the distribution scheme for Chapter 7 estates and provides that any remaining property of the estate, after payment of claims and administrative expenses, "shall be distributed— . . . to the debtor."[67]

Because the Bankruptcy Code provides no statutory basis to deny a debtor a surplus distribution on the ground of judicial estoppel, and because equitable doctrines may not be applied in a manner that contravenes the express provisions of the Code, the Trustee's request to deny any surplus distribution likewise cannot be sustained as a matter of law.

Accordingly, it is hereby:

1. **ORDERED** that the Trustee's Objection to the Debtors' claimed $67,100 exemption in the PI Claim and resulting Settlement Proceeds is ***OVERRULED***; and it is further

2. **ORDERED** that the Trustee's Motion is ***DENIED*** to the extent it seeks to deny the Debtors' right to a distribution under § 726(a)(6).

### ### END OF ORDER ###

---

[65] *Law v. Siegel*, 571 U.S. 415, 424–25 (2014).
[66] *Id.* at 421–25.
[67] 11 U.S.C. § 726(a)(6).